M. Taylor Florence, SBN 159695
E-Mail: taylor.florence@bullivant.com
Connie Sue Martin, (*pro hac vice* pending)
E-Mail: conniesue.martin@bullivant.com
BULLIVANT HOUSER BAILEY PC
1415 L Street, Suite 1000
Sacramento, California  95814
Telephone: 916.930.2500
Facsimile: 916.930.2501

Attorneys for Defendants Bullion River Gold Corp.
and French Gulch (Nevada) Mining Corp.

Jack Silver, Esq. SBN  160575
Jerry Bernhaut, Esq. SBN 206264
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel.  (707) 528-8175
Fax. (707) 528-8675
E-mail: lhm28843@sbcglobal.net

Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit corporation; HEATH JAY BENNETT a minor child, by and through his guardian ad litem BIANCA AUGUSTINE; MARIAH FRANCES BELLA BENNETT, a minor child, by and through her guardian ad litem BIANCA AUGUSTINE; JAROD MYRON BLOOM, a minor child, by and through his guardian ad litem BIANCA AUGUSTINE; BIANCA AUGUSTINE; and STUART BENNETT, <br><br>        Plaintiffs, <br><br>  v. <br><br> BULLION RIVER GOLD CORP., FRENCH GULCH (NEVADA) MINING CORP, and DOES 1-10, Inclusive, <br><br>        Defendants / | CASE NO.  2:08-CV-00791-MCE-GGH <br><br> **JOINT STATUS REPORT** |

Defendants BULLION RIVER GOLD CORP. and FRENCH GULCH (NEVADA) MINING CORP and Plaintiffs NORTHERN CALIFORNIA RIVER WATCH, ,BIANCA BENNETT & FAMILY, in accordance with the Order issued by Hon. Morrison C. England, Jr., submit this Joint Status Report.

## I.    SUMMARY OF CLAIMS

Northern California River Watch and the Individual Plaintiffs make the following claims for relief:

1.  Violation of CWA  33 U.S.C. §  1251 et seq., 33 U.S.C. § 1342 (a) and (b),  33 U.S.C. § 1311:  Discharge of Pollutants from Point Sources Must be Regulated by a NPDES Permit.

    1.1.    Plaintiffs allege that Defendants have and continue to violate the CWA as evidenced by the discharges of pollutants from a point source without a NPDES permit in violation of Section 301 of the CWA, 33 U.S.C. § 1311.

    1.2.    Plaintiffs allege that Defendants are committing point source discharges on a daily basis to waters of the United States without a NPDES permit in the course of their operation of the Washington Mine site and facilities as described in the CWA Notice.

    1.3.    Plaintiffs allege that point source discharges to waters of the United States occur every day via ground water migration due to the hydrological connection between the various adits and other current and former operational sites, as described in the CWA Notice, and adjacent surface waters, including Scorpion Gulch Creek and French Gulch Creek, tributaries to Whiskeytown Reservoir, all waters of the United States.

    1.4.    Plaintiffs allege that Defendants are routinely committing point source discharges to waters of the United States without a NPDES permit by permitting wastewater and acid drainage via surface flows by gravity from the Robillard, I-Level and Barnes Adits of the Washington Mine into adjacent surface waters, including Scorpion Gulch Creek and French Gulch Creek, and by wastewater

flow from a retention pond through a pipeline over ground to the Right Fork of French Gulch Creek, all described in detail in the CWA Notice.

  1.5. Defendants allege that they are compliance with all necessary state and federal permits.

  1.6. Defendants further allege that they have fully complied with all administrative orders to remediate any past violations and have paid civil penalties in full, thus fully settling and resolving Plaintiffs' alleged claims.

 2. <u>Violation of CWA , 33 U.S.C. § 1342(p); 40 C.F.R. § 122.26:  Discharger Must Comply With California's General Industrial Storm Water Permit</u>

  2.1. Plaintiffs allege that Defendants have violated and continue to violate the CWA by violating California's General Permit through un-permitted discharges of contaminated storm water from their Washington Mine facilities.

  2.2. Plaintiffs also allege that Defendants have violated and continue to violate the CWA through discharges of non-storm water pollutants from said Washington Mine facilities in violation of effluent limitations.  Plaintiffs further allege that Defendants have violated and continue to violate the CWA through violations of the procedural requirements of the General Permit.

  2.3. Defendants allege that they are compliance with all necessary state and federal permits.

  2.4. Defendants further allege that they have fully complied with all administrative orders to remediate any past violations and have paid civil penalties in full, thus fully settling and resolving Plaintiffs' alleged claims.

 3. <u>Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C.  § 6972(a)(1)(A)</u>

  RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any person

who violates a PERMIT, STANDARD or REGULATION pursuant to the RCRA. Civil Penalties may be assessed against any person or entity in violation of this section, under the provisions of the RCRA, 42 U.S.C. §§ 6928(a) and (g).

      3.1.    Plaintiffs allege that Defendants' storage and handling of materials at the mine containing arsenic and other toxic metals, defined as hazardous wastes under the RCRA, has caused the discharge of hazardous wastes to soil and groundwater in violation of regulations regarding the use and disposal of hazardous wastes.

      3.2.    Defendants allege that they are compliance with all necessary state and federal permits.

      3.3.    Defendants further allege that they have fully complied with all administrative orders to remediate any past violations and have paid civil penalties in full, thus fully settling and resolving Plaintiffs' alleged claims.

4.    <u>Violation of 42 U.S.C. § 6901 et seq., specifically 42 U.S.C. § 6972(a)(1)(B)</u>

RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment.

      4.1.    Plaintiffs allege that Defendants own and operate the mine at which they have stored mine tailings and waste rock containing pollutants including arsenic, potassium xanthate, copper sulfate and methylisobutylcarbonol, lead copper and zinc, in a manner which has allowed them to leach pollutants into soil and ground water beneath and adjacent to the mine.

      4.2.    Plaintiffs also allege that the pollutants listed above are known to be hazardous

to the environment and if released into the environment in sufficient quantity to pose an imminent and substantial risk.

   4.3. Defendants allege that they are compliance with all necessary state and federal permits.

   4.4. Defendants further allege that they have fully complied with all administrative orders to remediate any past violations and have paid civil penalties in full, thus fully settling and resolving Plaintiffs' alleged claims.

  5. <u>Violation of California Health and Safety Code §25249.5</u>

   5.1. Plaintiffs allege that in the course of doing business Defendants have discharged arsenic and lead to surface and groundwater at the mine on a daily basis since January 1, 1976.

   5.2. Plaintiffs also allege that arsenic (listed 02/27/87) is a known carcinogen and lead was listed in 02/27/87 as causing reproductive toxicity and listed in 01/01/91 as causing cancer.

   5.3. Plaintiffs further allege that surface and groundwater at the mine are potential sources of drinking water under the RWQCB's Water Quality Control Plan.

   5.4. Defendants allege that they are compliance with all necessary state and federal permits.

   5.5. Defendants further allege that they have fully complied with all administrative orders to remediate any past violations and have paid civil penalties in full, thus fully settling and resolving Plaintiffs' alleged claims.

 Defendants deny each and every one of Plaintiffs' allegations.

 The Individual Plaintiffs make the following additional state-law based claims for relief, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the Federal causes of action.

2:08-CV-00791 MCE GGH
JOINT STATUS REPORT 5

6. <u>Negligence:</u> The Individual Plaintiffs allege that Defendants have failed to exercise due care in the storage, disposal and handling of hazardous substances, including arsenic, lead, petrochemicals, potassium xanthate and copper sulfate, which negligent conduct of Defendants has proximately caused Individual Plaintiffs to suffer bodily injury and property damage.

    6.1. Defendants allege that they have at all times exercised due care in the storage, disposal and handling of all regulated substances, including hazardous substances.

7. <u>Negligence Per Se:</u> The Individual Plaintiffs allege that Defendants have violated and continue to violate provisions of the CWA and RCRA. The Individual Plaintiffs further allege that these violations are the legal cause of the Individual Plaintiffs' injuries and damages.

    7.1. Defendants allege that they are compliance with all necessary state and federal permits.

    7.2. Defendants further allege that they have fully complied with all administrative orders to remediate any past violations and have paid civil penalties in full, thus fully settling and resolving Plaintiffs' alleged claims.

8. <u>Inverse Condemnation:</u> The Individual Plaintiffs allege that Defendants have discharged pollutants into the air, surface and subsurface water in and around Individual Plaintiffs' real property, resulting in loss of value and habitability of their property.

    8.1. Defendants allege that they are compliance with all necessary state and federal permits.

    8.2. Defendants further allege that, to the extent there have been discharges to the air, surface or subsurface water that violated Defendants' permits, Defendants have fully complied with all administrative orders to remediate any past violations and have paid civil penalties in full, thus fully settling and resolving Plaintiffs' alleged claims.

9. <u>Nuisance:</u> The Individual Plaintiffs allege that Defendants operation, control and management of the Washington Mine Site has contaminated the air, soil, ground and surface water in and around Individual Plaintiffs' real property, constituting a nuisance under California Civil Code § 3479 in that it deprived Individual Plaintiffs of the quiet enjoyment of their property.

10. <u>Trespass:</u> The Individual Plaintiffs allege that Defendants' conduct, including the alleged discharge of pollutants from Defendants'' Washington Mine Site and from mine waste rock spread on the road adjacent to Individual Plaintiffs' real property, resulting in contamination of Individual Plaintiffs' real property.

10.1. The Individual Plaintiffs further allege that Defendants' failure to properly clean up and remediate the conditions causing said damage, constitute wrongful acts of continuing trespass on Individual Plaintiffs' real property and has interfered with Individual Plaintiffs ' rights of private occupancy.

10.2. Defendants allege that they are compliance with all necessary state and federal permits and that discharges associated with Defendants' operations are permitted discharges.

10.3. Defendants further allege that to the extent there have been permit violations, Defendants have fully complied with all administrative orders to remediate any past violations and have paid civil penalties in full, thus fully settling and resolving Plaintiffs' alleged claims.

11. <u>Strict Liability in Tort:</u> The Individual Plaintiffs allege that Defendants' conduct, including the alleged discharge of pollutants from Defendants' Washington Mine Site and from mine waste rock spread on the road adjacent to Individual Plaintiffs' real property, caused an ultra hazardous activity to exist.

11.1. The Individual Plaintiffs further allege that they have been damaged as a result of Defendants' course of conduct while engaged in the aforesaid ultra hazardous activity.

The Defendants deny each and every one of Plaintiffs' allegations.

## II. STATUS OF SERVICE

Pleadings were served on Defendants by leaving them with an Administrative Assistant at Defendants' headquarters on July 18, 2008. Proofs of Service were filed with the court on July 25, 2008. Defendant Does 1 – 10 have not been identified, nor have additional individual defendants been served.

## III. JOINDER OF PARTIES

None of the parties presently contemplate the joinder of additional parties. However, should discovery yield facts from which the identity of third parties responsible for the pollution alleged by the Plaintiffs may be determined, Defendants may seek leave to join additional parties.

## IV. AMENDMENTS TO PLEADINGS

Plaintiff Northern California River Watch anticipates amending its Complaint after initial discovery in order to update the pleadings and incorporate any additional notices filed. Defendants may amend their Answer and Affirmative Defenses to assert third-party claims if discovery yields facts from which the identity of third parties responsible for the pollution alleged by the Plaintiffs may be determined.

## V. STATUTORY BASIS FOR JURISDICTION AND VENUE

1. Plaintiffs have alleged that subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1).

2. Plaintiffs have also alleged that subject matter jurisdiction is conferred upon this Court by RCRA § 7002(a)(1), 42 U.S.C. § 6972(a)(1).

3. Plaintiffs have alleged that notice of the CWA violations alleged in this Complaint was given more than sixty (60) days prior to commencement of this lawsuit, to: (a) Defendants, (b) the United States EPA, Federal and Regional, and (c) the State of California Water Resources Control

Board.  Defendants allege that Plaintiffs' Notice was neither timely nor sufficient.

4.  Plaintiffs have also alleged that a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

5.  Plaintiffs have further alleged that notice of the RCRA violations alleged in this Complaint was given more than ninety (90) days prior to the commencement of this lawsuit to: (a) Defendants, (b) the United States Environmental Protection Agency, Federal and Regional,(c) the State of California Water Resources Control Board, and (d) the State of California Integrated Waste Management Board.  Defendants allege that this Notice was neither timely nor sufficient.

6.  Plaintiffs allege that pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), venue lies in this District as the facilities for the extraction and processing of gold containing ore under Defendants' operation and/or control, and the sites where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

7.  Plaintiffs further allege that the basis for assignment of this case to the Eastern District of California, pursuant to RCRA §7002(a)&(b), 42 U.S.C. §§ 6972(a)&(b), is that Defendants' mine and operations are located in this District.  All of the alleged sites of pollution are located in the Eastern District of California, as well.  Defendants deny that Defendants' operations have violated any state or federal law or permit or caused illegal discharges for which a cause of action has arisen.

8.  The Individual Plaintiffs allege that subject matter jurisdiction is conferred upon this Court by California Health and Safety Code § 25249.7 (d).

9.  The Individual Plaintiffs further allege that this Court has supplemental jurisdiction over all State based causes of action in this case pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the Federal causes of action.

## VI.    ANTICIPATED DISCOVERY AND SCHEDULING OF DISCOVERY

1. The parties have agreed to exchange initial disclosures within thirty (30) days of the execution of this joint status report. No changes in form are required.

2. The subjects on which discovery may be needed include:

   2.1. Surface runoff of wastewater from the Mine's water treatment system;

   2.2. Overapplication and runoff of unused process water;

   2.3. Surface runoff of pollutants from the Mine's percolation and settling ponds;

   2.4. Leaching into ground water of pollutants from the Mine's percolation and settling ponds;

   2.5. Surface runoff of pollutants and leaching into ground water of pollutants from materials stockpiled at the Mine;

   2.6. Surface runoff of pollutants and leaching into ground water of pollutants from the adits and other operational sites and formerly operational sites at the Mine;

   2.7. Alleged contaminant pathways from the various sources of pollution at the Mine to Scorpion Gulch, French Gulch and their tributaries in the vicinity of the Mine;

   2.8. The location of stormwater discharge points at the Mine and the adequacy of testing at the discharge points to characterize runoff from the Mine;

   2.9. Defendants' compliance with the terms and conditions of California's General Industrial Storm Water Permit;

   2.10. The adequacy of Defendants' Storm Water Pollution Prevention Plan (SWPPP) and Defendants' compliance with their SWPPP;

   2.11. Soil erosion and site stabilization at the Mine, including the use of mine waste rock containing high levels of arsenic for site reclamation;

2.12. Soil erosion and pollutant runoff from mine waste rock used to surface access roads throughout the Mine site and on off-site roads in the vicinity of the Mine;

2.13. The alleged bodily injury suffered by the Individual Plaintiffs, including the alleged long term health effects on the Individual Plaintiffs;

2.14. The alleged property damage suffered by the Individual Plaintiffs, including alleged effects on the water, soil and air quality of the property of the Individual Plaintiffs;

2.15. The administrative and enforcement actions undertaken by state and federal regulatory agencies prior to the commencement of Plaintiffs' suit, and Plaintiffs' knowledge thereof prior to the commencement of Plaintiffs' suit;

2.16. The existing state administrative action(s) against Defendants;

2.17. Defendants' compliance with administrative notices and orders;

2.18. The timing and sufficiency of Plaintiffs Notices of alleged violations of the CWA, RCRA, and state law.

2.19. Plaintiffs' alleged standing;

2.20. The Individual Plaintiffs' medical histories and medical records, including medical examinations under FRCP 35;

2.21. The Individual Plaintiffs' psychological histories and psychological records, including psychological examinations under FRCP 35;

2.22. The Individual Plaintiffs' financial and employment records;

2.23. The Individual Plaintiffs' special damages.

3. Discovery and Case Schedule

3.1. All non-expert discovery shall be completed by **8/01/09**;

3.2. Experts shall be disclosed and reports provided by **10/15/09**;

2:08-CV-00791 MCE GGH
JOINT STATUS REPORT                                                                                                     11

    3.3.    Rebuttal experts shall be disclosed and reports provided by **11/15/09**;

    3.4.    All expert discovery shall be completed by **12/31/09**;

    3.5.    All non-discovery motions shall be filed by **1/30/10**;

    3.6.    A pretrial conference shall be held on or about **3/30/10**;

    3.7.    Trial shall commence on or about **4/30/10**.

4.    Estimated length of trial is 10 to 14 days.

5.    Phased Discovery:  The parties do not think discovery should be conducted in phases.

6.    Discovery Limitations:  The parties have agreed to apply the limitations on discovery under the Civil Rules separately to the environmental claims and the Individual Plaintiffs' personal injury claims, such that for the environmental claims each side will be limited to 10 depositions and 25 interrogatories; and for the Individual Plaintiffs' personal injury claims each side will be limited to an additional 10 depositions and an additional 25 interrogatories.  The parties further agree that, in light of there being 5 individual plaintiffs and the possible need to depose a number of medical experts, the parties will not unreasonably decline to stipulate to additional depositions.

## VII.   PRETRIAL MODIFICATION

The parties do not propose any modifications to standard pre-trial procedures.

## VIII.   RELATED CASES

The parties do not know of any related cases.

## IX.   PROSPECTS FOR SETTLEMENT

The parties have engaged in some preliminary settlement discussion but have not made significant progress to date.  The parties believe that there will be a greater likelihood of reaching settlement after they have conducted sufficient discovery to clarify the issues.  The parties agree that private mediation should be scheduled approximately180 days after the execution of this joint status

report, with the understanding that the date may be changed to an earlier or later date based on the parties' assessment of the likelihood of settlement.

## X. CORPORATE DISCLOSURE STATEMENTS

1. Plaintiff Northern California River Watch has no parent corporation and no publicly held company owns 10% or more of its stock.

2. Defendant Bullion River Gold Corp. is a publicly held company. It does not have a parent corporation, nor does any publicly held company own more than 10% or more of Bullion River Gold Corp.'s stock.

3. French Gulch (Nevada) Mining Corp. is a wholly-owned subsidiary of Bullion River Gold Corp. Bullion River Gold Corp., a publicly held company, owns 100% of French Gulch (Nevada) Mining Corp.'s stock.

Dated October 6, 2008                BULLIVANT HOUSER BAILEY PC

                                     By: /s/ M. Taylor Florence
                                         M. Taylor Florence
                                         Connie Sue Martin *pro hac vice*
                                         Attorneys for Defendants
                                         Bullion River Gold Corp., French Gulch
                                         (Nevada) Mining Corp.

Dated October 6, 2008                LAW OFFICE OF JACK SILVER

                                     By: /s/ Jerry Bernhaut
                                         Jerry Bernhaut
                                         Attorneys for Plaintiff
                                         Northern California River Watch

Dated October 6, 2008                BIANCA BENNETT AND FAMILY

                                     By: /s/ Bianca Bennett
                                         Bianca Bennett and Family
                                         Plaintiffs *in pro per*